IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DAVID CASILLAS, ET AL<br><br>    Plaintiffs,<br><br>    v.<br><br>TRIPLE-S VIDA, INC.,<br><br>    Defendant. | CIVIL NO. 16-2564 (PAD) |

## OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE

Triple-S Vida, Inc., ("Triple-S Vida") through the undersigned attorneys, respectfully opposes Plaintiffs' Motion and Memorandum of Law in Support of Summary Judgment and requests that the Court strike his purported expert reports:

**I.    INTRODUCTION:**

Plaintiffs' *Motion for Summary Judgment* should be denied because of its crass failure to comply with Federal Rule of Civil Procedure 56. The motion is unsupported by any admissible evidence. Indeed, the only documents submitted are two purported expert reports which have not been accompanied by a statement under penalty of perjury authenticating such documents. As such, these reports are inadmissible hearsay which should be stricken and, therefore, the motion lacks any evidentiary support. Such an absolute lack of support is sufficient to deny the motion for failure to comply with the Rules of Civil Procedure.

The motion should also be denied because the so-called expert reports submitted in support of the motions fail to comply with *Daubert v. Merrel Dow. Pharms.*, 509 U.S. 579 (1993) and,

therefore, lack evidentiary value and should be stricken. Without evidentiary support of any kind, the motion should be denied.

Where the Court still willing to consider an unauthenticated and hence inadmissible pair of documents which lack evidentiary weight, the Court should nonetheless conclude that Plaintiffs have failed to prove that the disability continued beyond the two year period in which Triple-S Vida paid benefits. In order to be considered disabled after the first two years of disability (when only not being able to perform his own occupation was required), after the first two years of disability the policy requires that the insured be unable to perform the duties of any occupation of which he or she is capable of because of their experience, education or training. Plaintiffs' contention that benefits are owed to him beyond the initial two-year period even if no disability exists ignores this clear requirement. Moreover, Plaintiffs' argument ignores that continued disability is a condition precedent to maintaining the policy in effect, as the end of the disability is one of the events that terminates coverage. Even assuming Plaintiff Casillas were only required to prove he could not perform the duties of his own occupation for two years, the policy clearly states that payments will not be paid after the disability ceases.

## II.  ARGUMENT:

### A.   PLAINTIFFS DID NOT AUTHENTICATE THE EVIDENCE SUBMITTED IN SUPPORT OF THEIR MOTION WHICH RENDERS SUCH EVIDENCE INADMISSIBLE.

Plaintiffs submitted only two documents in support of their request for summary judgment and the Statement of Uncontested Facts: Dr. Grovas' November 23, 2015 Independent Medical Report ("IME Report") and Dr. Grovas' December 4, 2017 Independent Medical Re-Evaluation Report ("IMERER"). These reports where not accompanied by an affidavit by Dr. Grovas authenticating the same. This lack of authentication renders the reports plainly inadmissible.

Fed.R.Civ.P. 56(c)(1) requires that the party moving for summary judgment identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" which support its motion. The moving party, therefore, has the burden of "demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once definite and admissible evidence has been presented, the burden shift to the non-moving party. *Santiago–Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 52 (1st Cir. 2000). Fed.R.Civ.P. 56(c)(2) allows a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." A document which is not part of the record must, therefore, be authenticated in order to be admissible in evidence for purposes of a motion to summary judgment.

In *Ramírez Ortiz v. Corporación del Centro Cardiovascular de Puerto Rico y del Caribe*, 32 F.Supp. 3d 83 (D.P.R. 2014), the plaintiffs submitted an expert report without it being sworn. Because it was unsworn, the Court concluded that it was "an inadmissible hearsay document that cannot be considered as part of the summary judgment record." *Id.* at 88 (citing *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006); *Capobianco v. City of N.Y.,* 422 F.3d 47, 55 (2d Cir. 2005). In *Maldonado-Rodríguez v. St. Luke's Memorial Hosp., Inc*., 940 F.Supp.2d 30 (D.P.R. 2013), the Court found that plaintiff's records submitted in support of a motion for summary judgment were inadmissible because they had not been authenticated through a sworn statement. The Court explained:

> "Documents supporting or opposing summary judgment must be properly authenticated." *Carmona v. Toledo*, 215 F.3d 124, 131 (1st Cir. 2000) (citing Fed.R.Civ.P. Rule 56(e)). To be admissible at the summary judgment stage,

3

> documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e). See 10A Wright, Miller & Kane, Federal Practice & Procedure § 2722 (3d ed. 1998). "Under Federal Rule of Civil Procedure 56(e), on summary judgment, the parties in their supporting affidavits shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Hoffman v. Applicators Sales And Service, Inc.*, 439 F.3d 9, 14 (1st Cir. 2006). "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." Id. "The failure to authenticate a document properly precludes its consideration on a motion for summary judgment." *Robinson v. Bodoff*, 355 F.Supp.2d 578, 582 (D. Mass. 2005) (striking all exhibits that were submitted without affidavits).
>
> **Moreover, a party must not "[overlook] the crucial point that documents do not automatically become a part of the record simply because they are the products of discovery." Hoffman, 439 F.3d at 15. "If a party wishes the court to consider matters disclosed during discovery, he must take appropriate steps to have them included in the record: merely citing to pages of discovery materials not of record does not suffice." Id**.

*Id.* at 34 (emphasis added); s*ee also González v. Maersk Line, Ltd.*, 2012 WL 2675230 (D.P.R. July 5, 2012); *see Ríos Colón v. United States*, 928 F.Supp.2d 388 (D.P.R. 2012)(finding an unsworn expert report to be "at best, an inadmissible hearsay document of the purported expert's opinion.")(citing *Pack*, 434 F.3d at 815; *Capobianco*, 422 F.3d at 55; *Fowle v. C&C Cola*, 868 F.2d 59, 67 (3d Cir. 1989)); *Liebling v. Novartis Pharmaceuticals Corporation*, 2014 WL 12576619 (C.D. Ca. 2014)(compiling authorities).

Since Dr. Grovas' reports are documents which are not part of the record, they must be authenticated in order to be admissible in evidence and in order to be used in support of Plaintiffs' *Motion for Summary Judgment*. The reports were submitted along with the motion, but were unaccompanied by a sworn statement, declaration, affidavit or any kind of attestation and, therefore, are inadmissible hearsay. Given that the two hearsay reports were the only documents submitted by Plaintiffs in support of their *Motion for Summary Judgment* and the *Statement of*

*Uncontested Facts*, the motion should be denied, as it would lack any evidentiary support to allow the court to conclude that no issue of fact exists that would prevent a judgment in plaintiffs' favor.

      **B.**    **PLAINTIFFS STATEMENT OF UNCONTESTED MATERIAL FACTS VIOLATES THIS COURT'S ANTI-FERRETING RULE.**

Aside from relying on the inadmissible reports in their *Statement of Uncontested Facts*, Plaintiffs include purported facts without making reference to any evidence whatsoever. The first two paragraphs of their statement relate to the plaintiffs' names, ages, marital status and **residence**. No document was submitted in support of any of these "facts." Triple-S Vida stated in its *Answer to the Complaint* that it lacked knowledge or information regarding the truth of an identical allegation. The lack of evidence in the record regarding domicile points to the fact that Plaintiffs' have failed to establish that there is diversity of citizenship and, therefore, that they have failed to establish the Court's jurisdiction over their claim. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991)(explaining that they key is proof of domicile, not proof of residence). Without evidence to support a finding of the existence of diversity, the Court should find that Plaintiffs have not met their burden of establishing the Court's jurisdiction and should, consequently, dismiss the complaint. *See Rivera v. Hospital Interamericano*, 125 F.Supp.2d 11, 17 (D.P.R. 2000)("[O]nce diversity jurisdiction is challenged, a plaintiff asserting it must demonstrate the facts supporting diversity jurisdiction by a preponderance of the evidence . . . . The Court further notes that a party's bare declaration of domicile, which is self-serving in nature, is accorded little weight when in conflict with objective facts").

Furthermore, Plaintiffs rely on general references to the purported expert reports and more often than not "cite" to page ranges upwards of ten pages. They also make general and unspecific references to Triple-S Vida's *Answer to the Complaint* by stating that Triple-S Vida supposedly

admitted a fact. However, they purposely fail to make specific references to the paragraphs of the Complaint and the Answer and fail to acknowledge that Triple-S Vida made significant exceptions and clarifications in multiple paragraphs which presumably correspond to facts they attempt to establish[1]. This is clearly the result of Plaintiffs flagrant violations of this Court's anti-ferreting rule contained in Local Rule 56(e) and which requires specific citations to the record. The rule states, in pertinent part,

> An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

Local Rule 56(e). "The rule is intended 'to relieve the district court of any responsibility ferret through the record to discern whether any material fact is genuinely in dispute.'" *Carreras v. Sajo, García & Partners*, 596 F.3d 25, 31 (1st Cir. 2010) (quoting *CMI Capital Market Inv. v. González–Toro*, 520 F.3d 58, 62–63 (1st Cir. 2008)).

Given the repeated violations of this Court's anti-ferreting rule, the Court should strike all statements of fact not supported by a specific reference to the record. The Court should, therefore,

---

[1] We note that Plaintiffs devote several pages of their motion recounting certain allegations of the complaint and Triple-S Vida's answer to them, and criticizing Triple-S Vida's denials and the explanations supporting such denials. This is yet another procedural violation of the Plaintiffs. At the summary judgment stage, the pleadings are no longer determinative of the parties' respective positions, for at this stage the parties are required to move beyond the pleadings. *See Hodge v. Parke Davis & Co.*, 833 F.2d 6, 7 (1st Cir. 1987) ("Rule 56(e) requires nonmoving party to go beyond pleadings to designate 'specific facts' on which party will bear burden of proof at trial") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986)); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990)("The courts examining the evidence must insist that the party opposing summary judgment go beyond the pleadings, and by his or her 'own affidavits, or by the 'depositions, answers to interrogatories, and admission on file designate specific facts showing that there is a genuine issue for trial.'") (quoting Fed.R.Civ.P. 56(e) and *Lipsett v. University of Puerto Rico*, 864 F.2d 886, 895 (1st Cir.1988)).

disregard paragraphs 7-23 and 26 of Plaintiffs' *Statement of Uncontested Facts*. The majority of these statements are also inadmissible due to their reliance on the inadmissible expert reports.

      **C.**      **THE PURPORTED EXPERT REPORTS ARE INADMISSIBLE UNDER *DAUBERT* AND SHOULD BE STRICKEN.**

To begin, there is nothing in the way of admissible evidence before the Court to establish Dr. Grovas' credentials as an expert. The curriculum vitae attached to the IME Report is, as explained above, inadmissible for lack of authenticity. Moreover, Dr. Grovas' purported expert reports fails to recount, analyze and weigh Mr. Casillas' medical history. Indeed, Mr. Casillas history regarding his car accident, back surgery, knee surgeries, psychiatric history and hospitalizations is not included and no analysis is made of how these pre-existing conditions impacted his present condition.

Rule 702 allows an expert witness to testify if (1) his "knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) "the testimony is based on sufficient facts or data;" (3) "the testimony is the product of reliable principles and methods," and (4) if "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Additionally, the Advisory Committee Note for Rule 702 states that, where the expert's testimony cannot comply with all three reliability requirements, the testimony must be excluded.

"The Daubert Court explained that this rule requires district courts to act as gatekeepers, ensuring that an expert's proffered testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 31 (1st Cir. 2012) (quoting *Daubert*, 509 U.S. at 597); *see* Glen Weissenberger, WEISSENBERGER'S FEDERAL EVIDENCE § 702.3 (7th ed. 2015). Evidence that is relevant has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be

without the evidence." *Pages-Ramírez v. Ramírez-González*, 605 F.3d 109, 115 (1st Cir. 2010). Relevant expert testimony must also be that which is outside of the scope of the "untrained layman." *United States v. Montas*, 41 F.3d 775, 783 (1st Cir. 1994).

To determine whether an expert's methodology is reliable, the Supreme Court has established the guidelines, such as examining whether the methodology has been tested, whether it has been published and subjected to peer review, what sort of rate of error would it have, whether there are standards that serve as controls and whether these standards were employed, and whether it has been generally accepted. *Daubert*, 509 U.S. at 593-94 (1993). In order to determine whether a methodology is reliable, "the district court must consider a number of factors, including but not limited to "the verifiability of the expert's theory or technique, the error rate inherent therein, whether the theory or technique has been published and/or subjected to peer review, and its level of acceptance within the scientific community." *Samaan*, 670 F.3d at 31-32 (quoting *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 81 (1st Cir. 1998)).

An expert's methodology would not be reliable where the expert fails to take all relevant facts into account and rule out all other alternatives, *Packgen v. Berry Plastics Corp.*, 46 F. Supp. 3d 92, 111 (D. Me. 2014), aff'd, 847 F.3d 80 (1st Cir. 2017); where the methodology cannot definitively confirm the conclusion reached by the expert, *Milward*, 820 F.3d at 480; where the expert's methodology is erroneous or he fails to explain how it works, *United States v. Brown*, 415 F.3d 1257 (11th Cir. 2005); where the methodology has not been published or peer-reviewed, *Ruiz-Troche*, 161 F.3d at 81; or where the expert conducted an incomplete investigation, *Valle-Ortiz v. R.J. Reynolds Tobacco Co.*, 385 F. Supp. 2d 126, 131 (D.P.R. 2005).

Rule 703 provides the courts with guidance in examining the bases for an expert's testimony. Rule 703 states that an expert opinion may be based on facts: (1) that the expert has

observed or been made aware of; (2) that are reasonably relied upon by experts in the field and not admitted into evidence; and (3) that are not reasonably relied upon by experts in the field nor admitted into evidence, but which still have probative value. Fed. R. Evid. 703.

Taken together, Rules 702 and 703 set forth the terms under which expert testimony would be helpful to the trier of fact and, consequently, admissible. Evidence that "confus[es] the issues" or "mislead[s] the jury" should be excluded. Fed. R. Evid. 403. In the context of expert reports relating to disability, Courts have found that reports which fail to take into account a subject's past medical history are not based on sufficient facts or data, as required by Fed.R.Evid. 702.

In *Rivera v. Centro Médico del Turabo Inc.*, the District Court rejected an expert report because the expert had not deemed it necessary to review the subjects medical history and records and his report was, therefore, based on incorrect factual premises. 2017 WL 4122607 (D.P.R. Sept, 18, 2017).

In *Rhone v. US*, the Southern District of New York excluded an expert report where the expert failed to include the subject's prior medical history and failed to address the evidence of prior accidents and the presence of the degenerative conditions brought forth by the government. 2007 WL 3340836 (S.D.N.Y. Nov. 9, 2007). The Court stated:

> Indeed, Dr. Pasqua's report does not address the Government's evidence that the injuries were degenerative in nature and does not mention Rhone's prior accident. In addition, Dr. Pasqua fails to consider Rhone's **medical history prior** to the December 2003 accident. Courts have repeatedly held that such conclusory statements are merely speculative and are insufficient to meet plaintiff's burden. *Id.* at *9 (citing cases).

In *North v. Ford Motor Co.*, a District Court excluded an expert testimony because it failed to include the subject's medical history and, therefore, was unreliable. The Court stated that:

>[The Expert] relied on incomplete information, and did not include such information as a complete medical and psychological history. He did not include **pre-existing conditions** such as early adolescent alcohol use by one Plaintiff or post-accident events such as the second car accident involving for a Plaintiff. As the Tenth Circuit stated in *Bitler,* "the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy **Rule 702**'s reliability requirements. 505 F.Supp.2d 1113 (D.U. 2007).

Likewise, in *Watson-Tobah v. Royal Moving & Storage, Inc.*, the same district excluded an expert testimony which was:

>[w]holly conclusory and not grounded in any differential or other scientific analysis ruling out other potential causes of plaintiffs injuries, such as plaintiff's prior car accidents or the physical altercations in which plaintiff was involved as a police officer. Indeed, the medical reports do not contain any causation analysis at all. Kaisman's reports do not mention any of plaintiff's prior accidents and workplace altercations, much less scientifically eliminate them as causal factors of the injuries to plaintiffs spine. Abramov's "initial physiatric evaluation" mentions (only) the 2005 accident, but does not contain any analysis assessing whether the 2005 accident could have caused plaintiff's injuries. Khakhar's report does not even include a causation opinion. 2014 WL 68865713 at (S.D.N.Y. Dec. 5, 2014).

In *Roth v. 2810026 Canada Limited*, the Western District of New York determined that the plaintiffs experts had failed to properly analyze the plaintiff's medical history so as to determine the effect, if any, of the tort had upon his health. 2017 WL 4310689 at *24 (W.D.N.Y. Sept. 28, 2017)("[T]he opinions are merely conclusory, with no attempt to distinguish the deficit in Roth's ROM of his cervical and lumbar spine ROMs before and after the collision or to otherwise explain the basis for concluding Roth's preexisting spine conditions were aggravated or exacerbated as a result of the collision"). The Court there noted that given the defendant's expert evidence establishing the existence of pre-existing conditions, plaintiff had the burden of coming forward with evidence to dispute the conclusion. *Id.* at 24 (citing *Brusso v. Imbeault*, 699 F.Supp.2d 567, 585-86 (W.D.N.Y. 2010) (citing cases).

In *Rangel v. Anderson*, the Southern District of Georgia found that expert reviewed only the subject's radiology reports and failed to review all other studies in the record regarding his prior conditions, rendering his opinion unreliable under *Daubert* and, therefore, inadequate for the assistance of the trier of fact under Fed. R. Evid. 702. 202 F.Supp.3d 1361, 1370 (S.D.GA. 2016) The Court excluded the experts opinion because the expert's "reliance upon (1) his treatment and observation of Plaintiff, (2) Plaintiff's testimony, and (3) Dr. Karl's own expertise does not remedy the insufficient bases of Dr. Karl's opinion." *Id.*

As stated above, Dr. Grovas' reports fail to address Mr. Casillas' extensive prior medical history. The initial IME Report of November 23, 2015 is silent regarding Casillas' prior medical history of a car accident, back surgery, two knee surgeries and his psychiatric history and hospitalizations. The fact that the subsequent IMERER was issued after Dr. Santiago had flagged the lack of clinical history in Dr. Grovas' IME Report and especially after Dr. Santiago had documented and explained the causal connection between such history and Mr. Casillas' current state, particularly weighs against the admissibility of the reports rendered by a purported expert whose qualifications as such have not been established for this court to, first qualify Dr. Grovas as an expert and, second admit his testimony in form of reports.

### D. PLAINTIFFS' THEORY OF LIABILITY IS CONTRARY TO THE CLEAR TERMS OF THE POLICY AT ISSUE.

In the *Motion for Summary Judgement*, Plaintiffs argue that Triple-S Vida is liable because it breached the terms of the policy by denying Mr. Casillas with the continuation of benefits enjoyed between September 8, 2011 and August 29, 2013. At the heart of Plaintiffs' dense and convoluted asseverational array, seems to be the argument that once Triple-S Vida considered Mr. Casillas could not perform his occupation for two years and was thus disabled, it could not cease

the payment of benefits because for all purposes Mr. Casillas continues to be disabled and he no longer has to present proof of such disability. Plaintiffs' interpretation of the policy is erroneous.

According to the policy, payment of disability benefits will end upon the occurrence of any of the following events:

    1. When disability ends; or

    2. Five years after the elimination period; or

    3. One year after the insured's 65th birthday.

*See, Triple-S Vida Statement of Uncontested Material Facts*, at ¶22, Docket No. 22.

Therefore, save for those events that depend solely on the passage of time (events 2 and 3), the insured has the continuing obligation to be disabled and present evidence to the insurer of such continuing disability, for the end of such condition terminates coverage. It is a well-established doctrine that generally the insured bears the initial burden of establishing coverage, while the insurer bears the burden on exclusions from coverage. *Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc.*, 820 F.3d 36, 41 (1st Cir. 2016); *Díaz Ayala v. ELA*, 2001 TSPR 40, P.R. Offic. Trans. ("Under the Puerto Rico Law of Evidence, the burden of proof of an obligation is on the party that demands its performance, such as an insured or claimant seeking to assert his or her right to compensation under an insurance contract. Nonetheless, if the insurance company denies an insured or claimant coverage or the right to compensation ... the burden of proof shifts to the insurer that denies its indemnity obligation.")(citing Rolando Cruz, DERECHO DE SEGUROS, p. 386, San Juan, Pubs. JTS (1999)).

In addition, under the policy, benefits are paid during the continuation of a "total disability," which in occurs:

    1. if the injury or illness causing the disability occurs or originates after the effective date of this rider; and
    2. if the disability begins after age 15 and before the policy anniversary following the insured's 65th birthday; and
    3. if the disability lasts one month; and
    4. if the insured:
        a. has lost the use of both legs; or
        b. has lost the use of both arms; or
        c. has lost the use of an arm and a leg; or
        d. has lost vision in both eyes; or
        **e. during the first two years of disability cannot perform the duties of his regular occupation; or**
        **f. after the first two years of disability cannot perform the essential duties of any occupation of which he is capable by reason of experience, education or training; or**
        g. cannot physically attend school, if the insured is a student.

*Triple-S Vida's Statement of Uncontested Material Facts* at ¶23, Docket No. 22 (emphasis added).

    The policy thus states that an insured individual who cannot perform the duties of **his regular occupation** during the first two years of disability will receive benefits. If, however, the insured cannot perform the duties **of any occupation** of which he is capable due to experience, education and training after the first two years, he will receive benefits. The policy clearly changes the applicable standard after the first two years of disability by requiring that the disability impede the exercise of any occupation, whereas during the first two years only the inability to perform the insured own occupation is required.

    The policy contains an "or" between the two sub-sections which, if read in isolation and out of context, can lead the reader to believe that the clauses are in the alternative. But this reading is contrary to the more natural meaning of the clause and which is apparent from a plain reading: that there are two different periods, i.e., first two years and subsequent years. "If any stipulation of a contract should admit of different meanings, it should be understood in the sense most suitable to give it effect." Art. 1236 of the Civil Code of PR. 31 LPRA § 3474. Furthermore, "[t]he

stipulations of a contract should be interpreted in relation to one another, giving to those that are doubtful the meaning which may appear from the consideration of all of them together." Art. 1237 of the Civil Code of PR. 31 LPRA § 3475. Moreover, these subsections cannot be read isolated but in tandem, because in order to obtain continued coverage the insured has to be disabled not only during the first two years of disability but, continuously until the policy expires due to the passage of time. Otherwise, the cessation of disability triggers the early termination of the policy and the insured may not expect to continue receiving benefits for disability, when the condition precedent to maintain the policy in effect is absent.

Plaintiffs proposed reading of the policy divorced from its plain text and, therefore, erroneous. Plaintiff is not forever entitled to disability benefits simply because he was found to be unable to perform the duties of his occupation for the first two years of disability. To be entitled to continued benefits he must show that he is unable to perform the duties of any occupation for which he is capable due to experience, education or training.

Triple-S Vida's expert's opinion is that Mr. Casillas' current physical condition is due to pre-existing conditions unrelated to the work related injuries he suffered in 2011. He thus concluded that:

> These prior medical conditions are considered to be a substantial contributory cause of Mr. Casillas' alleged total disability, because the symptoms he has exhibited and is exhibiting before and after the June 2011 work incidents are the same. Before June 2011, and at least since May 2010, Mr. Casillas was found to have hand limitations with pain, tenderness and sensory changes. Physicians had also diagnosed muscle weakness and marked loss of movement on back, neck and hips. Tellingly, the physicians also diagnosed the symptoms of classical bilateral Carpal Tunnel Syndrome and DDD.

*Triple-S Vida's Statement of Uncontested Material Facts* at ¶ 99, Docket No. 22. This renders his claim to benefits unmeritorious. Furthermore, Dr. Santiago considers that Mr. Casillas is capable

of performing "the essential duties of any other [sedentary] occupation based on Mr. Casillas' education, preparation and extensive work experience in Puerto Rico and the United States." *Id.* at ¶101. He would have, however, minimal restrictions such as:

> [O]ccasional lifting and carrying up to 10 pounds; sitting during 8 hours a day with short periods of rest and to change positions; standing for 3 hours every 8 hours of workday; walking for 1 hour every 8 hours of workday; and occasional bending at the waist and reaching above shoulder. I also find that Mr. Casillas has no restrictions in simple grasp, pull, push and fine manipulation. *Id.*

Even assuming that Plaintiffs' interpretation of the policy is correct, he would still not be entitled to benefits because his disability was allegedly caused by an acute cervical trauma, which, as he acknowledges, could no longer be seen in the 2014 and 2015 MRIs. The fact that the herniations resolved is, according to Plaintiffs, "hard evidence that they were not chronic disorders, but acute, and thus not classifiable as a preexisting condition." *Plaintiffs' Motion for Summary Judgment* at 10, Docket No. 26. The policy clearly states that the payment of benefits will end "when the disability ends; or 5 years after the elimination period; or the Policy anniversary following the insured's 65th birthday." Triple-S Vida's Statement of Uncontested Material Facts, ¶22, Docket No. 22. Benefits to Mr. Casillas, therefore, correctly ceased once the herniations produced by the 2011 injuries resolved. In any case, they would have ceased in 2016 (five years after the elimination period began).

On a final note, there is absolutely no evidence in the record as to the amount of damages claimed by Plaintiffs. Where the Court inclined to find in favor of Plaintiffs a damages hearing should be ordered.

WHEREFORE, it is respectfully requested that the Court deny Plaintiffs' *Motion for Summary Judgment*, strike his purported expert reports and, in turn, grant Triple-S Vida's *Motion for Summary Judgment*.

Respectfully submitted,

In San Juan, Puerto Rico, this 19th day of March 2018.

I hereby certify that today we filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for Plaintiff.

**CASELLAS ALCOVER & BURGOS, P.S.C.**
P.O. Box 364924
San Juan, Puerto Rico  00936-4924
Tel:  (787) 756-1400
Fax:  (787) 756-1401

*/s/César T. Alcover*
CÉSAR T. ALCOVER, USDC-PR 204311

*/s/Diana Pérez Seda*
DIANA PÉREZ SEDA, USDC-PR 232014